IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAMANTHA KEREKES,

      Plaintiff,

v.                                                Civ. No. 21-247 GBW

KILOLO KIJAKAZI, *Acting*
*Commissioner of the Social Security*
*Administration*,

      Defendant.

## ORDER DENYING REMAND

      This matter comes before the Court on Plaintiff's Motion to Reverse and Remand the Social Security Agency ("SSA") decision to deny Plaintiff Supplemental Security Income ("SSI"). *Doc. 22*. For the reasons explained below, the Court DENIES Plaintiff's motion and AFFIRMS the judgment of the SSA.

## I.    PROCEDURAL HISTORY

      Plaintiff filed an initial application for SSI on November 11, 2018, alleging disability beginning May 16, 2018. Administrative Record ("AR") at 83-85. Plaintiff's application was denied on initial review on February 21, 2019, and again on reconsideration on July 18, 2019. AR at 101, 125. On July 27, 2020, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 34–63. The ALJ issued an unfavorable decision on August 20, 2020. AR at 20-27. Plaintiff sought review from the Appeals

Council, which denied review on January 19, 2021, AR at 1, making the ALJ's denial the

Commissioner's final decision, *see* 20 C.F.R. §§ 416.1481, 422.210(a).

On March 21, 2021, Plaintiff filed suit in this Court, seeking review and reversal

of the ALJ's decision. *Doc. 1.* On November 11, 2014, Plaintiff filed the instant Motion

to Remand. *See doc. 22.* Defendant responded in opposition on February 5, 2022. *See*

*doc. 26.* Briefing on the Motion was complete on February 21, 2022, *see doc. 28,* with the

filing of Plaintiff's reply, *see doc. 27.*

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*,

933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court]

neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks

omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.3d at 800 (internal quotation marks omitted). "The record must

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to

discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III.   ALJ EVALUATION

### A.  Legal Standard

For purposes of SSI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 416.920. If the Commissioner finds that an individual is disabled at any step, the next step is not taken. *Id.* § 416.920(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and that either (3) his impairments meet or equal

one of the "Listings" of presumptively disabling impairments; or (4) he is unable to

perform his "past relevant work." *Id.* § 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d

1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017,

1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional

capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R.

§ 416.945(a)(3). A claimant's RFC is "the most [she] can still do despite [physical and

mental] limitations." *Id*. § 416.945(a)(1). Second, the ALJ determines the physical and

mental demands of the claimant's past work. "To make the necessary findings, the ALJ

must obtain adequate 'factual information about those work demands which have a

bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting

Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ

determines whether, in light of the RFC, the claimant is capable of meeting those

demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or

she proceeds to step five of the evaluation process. At step five, the burden of proof

shifts to the Commissioner to show that the claimant is able to perform other work in

the national economy, considering the claimant's RFC, age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

**B.  The ALJ's Decision**

On August 20, 2020, the ALJ issued a decision denying Plaintiff's application for SSI benefits.  *See* AR at 20-27.  In denying Plaintiff's application, the ALJ applied the five-step sequential analysis.  At step one, he found that Plaintiff "has not engaged in substantial gainful activity since November 20, 2018, the application date."  AR at 22.  At step two, the ALJ found that Plaintiff "has the following severe impairments: epilepsy, other disorders of the gastrointestinal system, asthma, schizophrenia spectrum and other psychotic disorders, and substance addiction disorders (drugs and alcohol."  *Id.*

At step three, ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or medically equal the severity of Listing 11.02 (epilepsy), Listing 3.03 (asthma), or Listing 12.03 (schizophrenia spectrum and other psychotic disorders).  AR at 22-23.  When assessing whether Plaintiff's mental impairments met the Paragraph B criteria for Listing 12.03, the ALJ found that Plaintiff has mild limitations in understanding, remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing herself.  AR at 23.

5

At step four, the ALJ concluded that Plaintiff "has no past relevant work," AR at 26, but does have the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), subject to several physical, environmental, mental, and interactional limitations, AR at 24. Physically, the ALJ found that Plaintiff can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. *Id.* Environmentally, the ALJ found that Plaintiff "must avoid even moderate exposure" to unprotected heights, unprotected moving mechanical parts, dangerous machinery, and dust, odors, fumes and pulmonary irritants. *Id.* Mentally, the ALJ found that Plaintiff can "understand, remember, and carry out simple tasks with routine supervision" and "respond appropriately to changes in a routine work setting which are gradually introduced." *Id.* He also found that normal work breaks would accommodate her need to take time off from tasks. *Id.* Socially, the ALJ found that Plaintiff can have no more than occasional interaction with supervisors and co-workers and incidental interaction with the general public.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that she can perform jobs that exist in significant numbers in the national economy. AR at 26. Specifically, the ALJ found that that Plaintiff can perform the requirements of three representative unskilled occupations involving light work: (1) Small Product Assembler I (Dictionary of Occupational Tables ("DOT") 706.684-022,

198,000 jobs nationally); (2) Sub-Assembler (DOT 729.684-054, 16,000 jobs nationality);

and (3) Inspector Packer (DOT 559.687-074, 60,000 jobs nationally).  AR at 27.

Accordingly, the ALJ concluded that Plaintiff was not disabled (as the Social Security

Act defines the term) from November 1, 2018, through the date of his decision.  *Id*.

## IV.  PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred at step four and five.  At step four, Plaintiff

argues that ALJ erred by not incorporating the moderate limitations in interacting with

others and concentrating, persisting, and maintaining pace found at step three in the

RFC and failing to explain their omission or incorporation.  *See doc. 22* at 4-8; *doc. 27* at 1.

At step five, Plaintiff asserts that the ALJ erred by not identifying and resolving a

conflict between the DOT descriptions for jobs that the vocational expert testified that

she could perform and both environmental and mental limitations in her RFC and the

moderate limitations found in paragraph B criteria at step three.  *See doc. 22* at 8-10.  The

Court disagrees with both arguments.

## V.  ANALYSIS

### A.  <u>Plaintiff's RFC Accounts for the Moderate Limitations She Was Found to Have at Step Three and Is Supported by Adequate Explanation</u>

Even if the RFC determined at step four must reflect moderate limitations found

at step three, the ALJ committed no error at step four.  Plaintiff's RFC is not inconsistent

with the moderate limitations that the ALJ found her to have at step three and the ALJ

supports this RFC with sufficient explanation.

As a preliminary matter, it is far from clear the extent to which the RFC at step

four must account for moderate limitations found at step three, as these steps follow

separate processes for assessing mental disability, and these processes serve different

purposes.  At step three, the ALJ determines whether an individual's mental

impairments meet or medically equal the criteria for a mental disorder listing in part by

"assess[ing] [the] individual's limitations and restrictions from a mental impairment(s)

in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult

mental disorder listings." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  Paragraph B

criteria "represent the areas of mental functioning a person uses in a work setting,"

include "interact[ing] with others" and "concentrat[ing], persist[ing], or maintain[ing]

pace," and are evaluated "on a five-point rating scale consisting of none, mild,

moderate, marked, and extreme limitation."  20 C.F.R. pt. 404, subpt. P, app. 1, listing

12.00.F.2.

By contrast, at step four, as mentioned earlier, the ALJ determines the claimant's

RFC—"the most [she] can still do despite [physical and mental] limitations," 20 C.F.R.  §

416.945—in light of "all of the relevant medical and other evidence," *id*. § 416.945(a)(3).

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process

requires a more detailed assessment by itemizing various functions contained in the

broad categories found in paragraphs B and C of the adult mental disorders listings in

12.00 of the Listing of Impairments . . . ."  SSR 96-8p, 1996 WL 374184, at *4; *see also id.* at

*2 ("[T]he RFC is a "function-by-function assessment.").  A "finding of a moderate

limitation . . . at step three does not necessarily translate to a work-related functional

limitation for the purposes of the RFC assessment."  *Vigil v. Colvin*, 805 F.3d 1199, 1203

(10th Cir. 2015).

Indeed, the Tenth Circuit has cautioned on several occasions—albeit in

unpublished opinions—that the ALJ has no obligation to incorporate limitations found

in paragraph B criteria at step three into his RFC determination at step four.  *See*

*DeFalco-Miller v. Colvin*, 520 F. App'x 741, 747-48 (10th Cir. 2013); *Suttles v. Colvin*, 543 F.

App'x 824, 826-27 (10th Cir. 2013); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir.

2013).  However, in published opinions, the Tenth Circuit has also required an ALJ to

resolve an "inconsistency" between the RFC and moderate limitations in the paragraph

B criteria on remand when remanding for a different error, *see Frantz v. Astrue*, 509 F.3d

1299, 1303 n.3 (10th Cir. 2007), and assess the consistency between step three limitations

and an RFC when determining whether the latter "adequately account[ed]" for a

claimant's memory and concentration defects, *see Vigil*, 805 F.3d at 1203-04.

Assuming without deciding that Plaintiff's RFC must account for moderate

limitations in concentration, persistence, and pace and interacting with others that she

was found to have at step three, the Court finds that Plaintiff's RFC does so here.  The

RFC accounts for Plaintiff's moderate limitation in concentration, persistence, and pace

by limiting her to "understand[ing], [re]member[ing], and carry[ing] out simple tasks."

*See* AR at 24.  "Simple tasks" are synonymous with unskilled work, *see Vigil*, 805 F.3d at

1203-04 (citing SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)), which corresponds to a

specific vocational preparation level (SVP) of one or two for occupations listed in the

DOT, *see* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).  "There may be cases in

which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's

mental limitations."  *Vigil*, 805 F.3d at 1204.  But "limiting . . . [P]laintiff to an SVP of one

or two," *see id.*, as the ALJ did here, *see* AR at 24, 27, "adequately [takes] into account

[her] moderate limitations in concentration, persistence, and pace," *Vigil*, 805 F.3d at

1204.

The RFC captures Plaintiff's moderate limitation in interacting with others by

limiting her to "incidental interaction with the general public" and "occasional

interaction with supervisors and co-workers."  *See* AR at 24.  A moderate limitation is a

"fair" ability to function independently, appropriately, effectively, and on a sustained

basis in an area."  20 C.F.R. pt. 404, subpt. P., app 1, listing 12.00.F.2.c.  In *Haga v. Astrue*,

482 F.3d 1205 (10th Cir. 2007), the Tenth Circuit found that "including in [a] RFC

determination that [claimant] was limited to simple . . . tasks with only incidental contact with the public"—as the ALJ did here, *see* AR at 24— amounts to "apparent[] accept[ance]" of a moderate limitation in interacting appropriately with the public, *see Haga*, 482 F.3d at 1208 (cleaned up).  As for occasional interaction with supervisors and co-workers, this limitation means that Plaintiff can interact with supervisors and co-workers "up to one-third of the time."  *See* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). This amount of interaction is not inconsistent with the fair ability to interact independently, appropriately, and effectively with others on a sustained basis that the ALJ found Plaintiff to have at step three.  *See, e.g.*, *Broberg-Moffit v. Kijakazi*, Case No. CIV-21-81-SM, 2021 WL 5854370, at *3 (W.D. Okla. Dec. 9, 2021).[1]

Turning to the supporting explanation that the ALJ offered for the RFC, Plaintiff claims that the ALJ's narrative is deficient for not addressing three items: (i) the omission of the above moderate limitations from the RFC, *see* doc. 22 at 5; (ii) "how

---

[1] It might be argued that limiting Plaintiff to "occasional interaction with supervisors and co-workers" at step four, *see* AR at 25, is not necessarily consistent with the moderate limitation in interacting with others found at step three since the limitation addresses only the frequency of interaction (and not the quality of that interaction), *see Gomez v. Berryhill*, Civ. No. 17-155 KK, 2018 WL 2973400, *12 (holding that less interaction with supervisors and co-workers does not necessarily account for a limited ability to do so appropriately).  Judges in this district are split over whether the "function-by-function assessment" of a claimant's mental RFC state step four must evaluate the quality of social interactions as well as their frequency.  *Compare Leah P. v. Kijakazi*, Civ. No. 21-407 SCY, 2022 WL 3042928, at *6 (D.N.M. Aug. 2, 2022) (rejecting the argument), *Rimer v. Berryhill*, No. 17-cv-0696 SMV, 2018 WL 2206927, at *5-6 (D.N.M. May 14, 2018) (same), *with Gomez*, 2018 WL 2973400, at *12 (accepting the argument).  This Court takes no position on this issue, though.  Plaintiff does not raise or otherwise develop the frequency-versus-quality distinction in his briefing, *see generally docs. 22, 27*, and so has waived it, *see Wall v. Astrue*, 561 F.3d 1048, 1066-67 (10th Cir. 2009).

moderate limitations in the ability to interact with others means [she] can have occasional interaction with supervisors and co-workers, and incidental interaction with the public," *id.* at 6; *doc. 27* at 1; and (iii) "how the evidence supported a finding of occasional interaction with supervisors and co-workers," *see doc. 22* at 6. Each of these arguments fails on the facts or the law.

The first purported defect is factually incorrect. As explained above, the RFC accounts for the moderate limitations in interacting with others and in concentration, persistence, and pace that the ALJ found at step three. Therefore, even if the ALJ had a duty at step four to explain the omission of limitations in the Paragraph B criteria found at step three, he did not breach that duty here.

The second purported defect is waived for lack of development. Presenting an argument in a perfunctory manner or failing to support it with caselaw waives that argument. *See Wall v. Astrue*, 561 F.3d 1048, 1066-67 (10th Cir. 2009); *Flores v. Astrue*, 246 F. App'x 540, 543 (10th Cir. 2007) ("A party's failure to cite any authority 'suggests either that there is no authority to sustain its position or that it expects the court to do its research.'" (quoting *Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970))). Plaintiff cites to no authority for the proposition that the ALJ must "explain how moderate limitations in the ability to interact with others means [she] can have occasional interaction with supervisors and co-workers, and incidental

12

interaction with the public." *See doc.* 22 at 6.  Therefore, she has waived the argument

that the ALJ must do so.  *See Flores*, F. App'x at 543.

Even if Plaintiff had developed this argument further, the Court is skeptical that

the ALJ must articulate how the RFC incorporates the moderate limitations that he

found in Paragraph B criteria at step three when the RFC is not inconsistent with these

limitations.  As noted above, steps three and four entail separate processes for

evaluating mental ability.  *See* SSR 96-8p, 1996 WL 374184, at *4.  "[T]he limitations

identified in the 'paragraph B' and 'paragraph C' criteria [at step three] are not an RFC

assessment," *id.*, and "do not apply at later steps," *see Suttles*, 543 F. App'x at 826-27

(citing *Beasley*, 520 F. App'x at 754, and *DeFalco-Miller*, 520 F. App'x at 747-48).  Even if

these limitations were evidence of disability, *cf.* 20 C.F.R. § 416.913 (defining the

categories of evidence the Social Security Administration considers), the "ALJ is not

required to discuss every piece of evidence" that supports his findings, *see Clifton*, 79

F.3d at 1009–10.  Therefore, the Court sees no need for the ALJ to explain how the RFC

accounts for paragraph B limitations when the Court can determine that it does so.

As for the third and final purported defect in the ALJ's explanation, the Court

finds that the ALJ provided an adequate explanation for limiting Plaintiff to occasional

interaction with supervisors and co-workers.  The ALJ's "RFC assessment must include

a narrative discussion describing how the evidence supports each conclusion."  SSR 96-

8p, 1996 WL 374184, at *7.  Here, the ALJ concluded that "due to her schizophrenia

spectrum [Plaintiff] is able to … occasionally interact with supervisors and co-workers."

AR at 25.  This conclusion implicitly incorporates the ALJ's discussion of Plaintiff's

history of schizophrenia a few paragraphs earlier.  There, he recounted that while

Plaintiff "has reported seeing things and hearing voices sometimes to treatment

providers and on some occasions alleged suicidal ideation[,] [o]n other occasions, she

has reported that she was free of auditory or visual hallucinations on her medication."

*Id.* (citing AR at 435, 1533, 1890, 2286).  He also mentioned that treatment providers had

noted Plaintiff "as presenting with good eye contact, no bizarre compulsive behavior,

no tics, tremors, or abnormal behaviors, and logical and organized thought."  *Id.* (citing

AR at 1727-28, 2239).  While admittedly brief, this discussion is hardly the "conclusory"

discussion of evidence that Plaintiff claims it to be.  *See doc. 22* at 7.[2]

**B.  <u>No Conflict Exists Between the RFC and the Occupational Requirements for Small Product Assembler I or Sub-Assembler</u>**

Plaintiff's RFC does not conflict with the DOT descriptions for the jobs that the

---

[2] Plaintiff also objects to the ALJ's discussion of evidence for "fail[ing] to consider properly the impact of [her] functional limitations."  *See doc. 22* at 7.  These functional limitations are not specified, but, from context, the Court understands them to be the moderate limitations in interacting with others that the ALJ found at step three.  The Court rejects this argument for the same reasons that it rejects the second narrative defect alleged by Plaintiff—that the ALJ had to articulate how the RFC captures the moderate limitations in paragraph B criteria that he found Plaintiff to have at step three even though the RFC was not inconsistent with these limitations. *See infra* at pp. 12-13.  Plaintiff has waived other arguments about flaws in the ALJ's narration of the evidence by not briefing them in anything more than a perfunctory manner.  *See Wall*, 561 F.3d at 1066.

vocational expert testified, and the ALJ found, that she can perform.  An ALJ must "take

administrative notice of 'reliable job information' available from" the DOT.  SSR 00-4p,

2000 WL 1898704, at *2 (citing 20 C.F.R. § 404.1566(d) & § 416.966(d)).  "The DOT lists

maximum requirements of occupations as generally performed . . ." based on

"comprehensive studies of how similar jobs are performed in different workplaces."  *Id.*

at *2-3.  While Social Security Administration "rel[ies] primarily on the DOT . . . for

information about the requirements of work in the national economy[,] [it] may also use

[vocational experts (VEs)] … to resolve complex vocational issues."  *Id.* at *2.

   "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a

conflict."  *Id.*  Where "an apparent unresolved conflict" exists between VE testimony

and the DOT, Tenth Circuit precedent and Social Security Administration policy require

the ALJ to "elicit a reasonable explanation for the conflict [from the VE] before relying

on the VE . . . evidence to support a determination or decision about whether the

claimant is disabled" and "determin[e] if the explanation given by the VE . . . is

reasonable and provides a basis for relying on the VE . . . testimony rather than the DOT

information."  *Id.*; *see also Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).  If a VE's

testimony and the DOT conflict, an ALJ does not discharge his duty under *Haddock*

merely by asking the VE whether his testimony is consistent with the DOT and relying

on the VE's incorrect assertion that it is.  *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir.

2016).

Here, Plaintiff raises four apparent conflicts between the environmental and mental limitations in his RFC and the DOT descriptions for the jobs of small product assembler I and sub-assembler (which the VE testified that a person with his RFC could perform): (1) the DOT description for small products assembler I mentions interacting with various tools and machines, which is inconsistent with an environmental limitation precluding Plaintiff from even moderate exposure to unprotected moving mechanical parts and dangerous machinery, *see doc. 22* at 9-10; (2) the DOT description for sub-assembler mentions various tools, which is inconsistent with this same environmental limitation, *see id.* at 10; (3) based on its DOT description, a small product assembler I must maintain "an assembly line pace," which is inconsistent with Plaintiff's moderate limitation in concentration, persistence, and maintaining pace, *see id.*; and (4) the DOT description for small product assembler I notes that assemblers "may be assigned to different work stations as production needs require or shift from one station to another reduce fatigue factor," which is inconsistent with the mental limitation limiting Plaintiff to changes in a routine work setting which are gradually introduced, *see id.* The Court finds that none of these conflicts exist.

1.  **No Conflict Exists Between the DOT Description for Small Product Assembler I and Plaintiff's Environmental Limitation about Machinery**

No conflict exists between the description for small product assembler I in the DOT and an environmental limitation in Plaintiff's RFC precluding her from "even moderate exposure to . . . unprotected moving mechanical parts and dangerous machinery." AR at 24. Courts are split on this issue. *Compare Brown v. Colvin*, Case No. 14-CV-21-JED-FHM, 2016 WL 1627661, at *3 (N.D. Okla. Apr. 25, 2016) (no conflict between DOT description for small products assembler I and the environmental limitation of avoiding "fast or dangerous machinery"), and *Rhodes v. Saul*, Case No. 4:18-cv-00986-NKL, 2019 WL 5618084, at *8 (W.D. Mo. Oct. 31, 2019) (no conflict between DOT description for small products assembler I and an environmental limitation of avoiding "all exposure to hazards of … machinery"), *with Jimenez v. Astrue*, No. EDCV 11-1670 JC, 2012 WL 1067945, at *4 (C.D. Cal. Mar. 29, 2012) (an apparent conflict exists between the DOT description for small products assembler I and a RFC limitation barring work around "dangerous machinery"), *and Hopper v. Colvin*, No. 6:13-cv-01525-HZ, 2014 WL 6473566, at *9 (D. Or. Nov. 14, 2014) (same). Courts finding an absence of conflict rely on the part of the DOT definition for small product assembler I that states that "moving mech. parts" is not an activity or condition present in this position. *See Brown*, 2016 WL 1627661, at *3 (citing DOT 706.684-022, 1991 WL 679050); *Rhodes*, 2019 WL 5618084, at *8. Courts finding conflict note that this job's description

mentions the loading and unloading of machines and the use of hand tools or portable

powered tools.  *See Jimenez*, 2012 WL 1067945, at *4 (small products assembler I); *Hopper*,

2014 WL 6473566, at *9 (same).

The Court concludes that the courts which find a lack of conflict have a better

understanding of both environmental restrictions involving machinery and the DOT

definition for small products assembler I.  "[T]here is a significant difference between

machinery and 'hazardous machinery,' which refers to 'moving mechanical parts, of

equipment, tools, or machinery.'"  *Norwood v. Astrue*, No. CV 09-3996-RC, 2010 WL

2509358, at *6 (C.D. Cal. June 17, 2010) (quoting SSR 96-9p, 1996 WL 374185, at *9).  Task

element statements in the DOT descriptions for small products assembler I involve

interaction with tools and previously machinery but not moving mechanical parts of

machinery.  *See* DOT 706.684-022, 1991 WL 679050 (stating that a small products

assembler I, *inter alia* "[p]ositions parts in specified relationship to each other, using

hands, tweezers, or tongs[,] [b]olts, screws, clips, cements, or otherwise fastens parts

together by hand or using handtools or portable powered tools, [and] [l]oads and

unloads previously setup machines . . . to perform fastening, force fitting, or light metal-

cutting operation on assembly line").  The only instance where the DOT description for

small products assembler I discusses moving mechanical parts is in a list where it

specifies the frequency with which certain activities or conditions exist and expressly

states that "moving mech. parts"—i.e., hazardous machinery, *see* SSR 96-9p, 1996 WL 374185, at *9—are never present in this job.  *See* DOT 706.684-022, 1991 WL 679050.

Therefore, no conflict exists between the environmental limitation requiring Plaintiff to "avoid even moderate exposure to . . . unprotected moving mechanical parts and dangerous machinery," AR at 24, and the DOT description for small products assembler I, *see Brown*, 2016 WL 1627661, at *3; *Rhodes*, 2019 WL 5618084, at *8.

### 2.  No Conflict Exists Between the DOT Description for Sub-Assembler and Plaintiff's Environmental Limitation about Machinery

Similarly, no conflict exists between the description for sub-assembler in the DOT and an environmental limitation in Plaintiff's RFC precluding her from "even moderate exposure to . . . unprotected moving mechanical parts and dangerous machinery."  AR at 24.  Unlike their counterparts in the description of small products assembler I above, the task element statements for the DOT description for sub-assembler do not even mention machinery.  *See* DOT 729.684-054, 1991 WL 679729 (stating that a sub-assembler "[t]apes lead wires to coils to facilitate soldering[,] [s]olders coil and lead wires, using soldering iron, [t]rims leads and positions parts in specified relationship to each other, using hands and handtools [and] [b]olts, screws, clips, cements, and fastens parts together, using hands, handtools, or portable powered tools" and "[m]ay remove burrs from parts prior to assembly, using file or electric grinder").  The DOT description

19

for sub-assembler only discusses machinery (as opposed to tools) in one place: a list where it specifies the frequency with which certain activities or conditions exist and expressly states that "moving mech. parts"—i.e., hazardous machinery, *see* SSR 96-9p, 1996 WL 374185, at *9—are never present in this job.  *See* DOT 729.684-054, 1991 WL 679729.

It is therefore unsurprising that the few cases encountered by the Court in its research about conflicts between the DOT description for sub assembler and environmental limitations precluding contact with dangerous machinery or moving mechanical parts hold that no such conflict exists.  *See Kopek v. Saul*, No. 4:19-CV-00287-DGK, 2020 WL 2858533, at *5 (W.D. Mo. June 2, 2020) (no conflict between the DOT description for sub-assembler and an RFC dictating that claimant must "avoid all hazards," which include moving mechanical parts of machinery); *Pemberton v. Saul*, Case No. 18-00324-CV-W-LMC, 2020 WL 1536542, at *3, *5 (W.D. Mo. Mar. 31, 2020) (no conflict between the DOT description for sub assembler and an RFC precluding exposure to "hazards, such as dangerous machinery").

### 3.  No Conflict Exists Between the DOT Description for Small Product Assembler I and the Moderate Limitations Found at Step Three

Moving on to mental limitations, no conflict exists between the DOT description for small products assembler I and the moderate limitations in concentrating, persisting,

or maintaining pace that the ALJ found at step three.  As an initial matter, the Court

notes that none of the hypothetical individuals that the ALJ posited to the VE at the

hearing had these moderate limitations, *see* AR at 59-63, perhaps because, as mentioned

earlier, limitations found at step three "are not an RFC assessment," SSR 96-8p, 1996 WL

374184, at *4, and the testimony that an ALJ solicits from a VE is about whether

hypothetical individuals with different RFCs could perform any work in the national

economy.  Plaintiff cites no authority for the proposition that the ALJ must address

conflict between her limitations in paragraph B criteria at step three and the DOT

descriptions for jobs that the VE opines that she can perform at step five.  *See generally*

*doc. 22; doc. 27*.  Therefore, she has waived argument on this issue.  *See Flores*, 246 F.

App'x at 543.  However, even if such authority existed, the DOT description for small

products assembler I is not inconsistent with Plaintiff's moderate limitations in

paragraph B criteria.  As discussed earlier, limiting Plaintiff to occupations like this one

that have "an SVP of one or two[] adequately [takes] into account [her] moderate

limitations in concentration, persistence, and pace" found at step three.  *See Vigil*, 805

F.3d at 1204.

> **4. No Conflict Exists Between the DOT Description for Small Products Assembler I and Plaintiff's Mental Limitation about Changes at Work**

Turning to Plaintiff's final argument, no conflict exists between the DOT

description for small products assembler I and the mental limitation in Plaintiff's RFC "to changes in a routine work setting which are gradually introduced."  AR at 24.  As a preliminary matter, the Court notes that Plaintiff's argument otherwise misreads the word "may" in the DOT description for small products assembler I to stand for the proposition that assemblers will sometimes work at different workstations.  *See doc. 22* at 10.  The description states that an assembler "[m]ay be assigned to different work stations as production needs require or shift from one station or another to reduce fatigue factor," DOT 706.684-022, 1991 WL 679050, but "[t]he word 'May' does not indicate that a worker will sometimes perform [the tasks that follow it] but rather that some workers in different establishments generally perform one of the varied tasks listed" after the word, DOT Parts of the Occupational Definition, 1991 WL 645965 (Jan. 1, 2016); *see also id.* ("Many definitions contain one or more sentences beginning with the word 'May.'  They describe duties required of workers in this occupation in some establishments but not in others.").  Read properly, the DOT description for small products assembler I provides that some assemblers will generally work at multiple, different workstations, while others will work at a single station.

This description does not conflict with limiting Plaintiff to gradually introduced changes in a routine work setting.  Working at a single workstation does not violate this limitation.  Nor does generally working at various, different workstations.  Under the

latter scenario, working at different workstations is part of the routine, not a change

that is introduced.  *See Eason v. Colvin*, Case No. 3:14-cv-00076-SLG, 2015 WL 5125502, at

*11 (D. Alaska Aug. 31, 2015) (finding no conflict between the DOT description for small

products assembler I and an RFC limitation to "few workplace changes").

## VI.    CONCLUSION

For the foregoing reasons, the Court finds that the ALJ committed no reversable

error.  Therefore, the Court hereby DENIES Plaintiff's Motion to Reverse and Remand

(*doc. 22*) and AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**